IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAWN L. WILLIAMS,<br><br>    Plaintiff,<br><br>  v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, ET AL.,<br><br>    Defendants.<br>_____/ | No. C 09-05063 JSW<br><br>**ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT** |

    Now before the Court are the motions for summary judgment filed by defendant City and County of San Francisco ("City") and filed by SEIU Local 1021, George Diaz and Jonathan Wright (collectively, "Union Defendants"). These motions are now fully briefed and ripe for decision. The Court finds that the motions are appropriate for disposition without oral argument and the matters are deemed submitted. *See* N.D. Civ. L.R. 7-1(b). Accordingly, the hearing set for May 20, 2011 is HEREBY VACATED. Having carefully reviewed the parties' papers and considered their arguments and the relevant legal authority, and good cause appearing, the Court HEREBY GRANTS the motions for summary judgment.

## BACKGROUND

    Plaintiff, Shawn L. Williams, is an African American woman who was employed by the City and County of San Francisco's Human Services Agency ("HSA") from March 2005 through May 2009 as an Eligibility Worker. Williams was responsible for taking Medi-Cal

applications and making determinations regarding eligibility, managing a case-load of Medi-Cal recipients, and referring her Medi-Cal clients to other benefit programs (Declaration of Ruth M. Bond ("Bond Decl."), Ex. A (Williams deposition) at 35:12-37:1.)

The evidence is replete with examples and instances of Plaintiff's insubordination, rude behavior, failure to follow employer directives, inability to cooperate with co-workers and inability to follow instructions from supervisors. After numerous verbal and written counselings, written warnings, a work plan to improve her performance, and two suspensions, on March 12, 2009, the HSA finally terminated Plaintiff from employment.

Defendant Service Employees International Union, Local 1021 ("Union") is a labor organization that represents approximately 54,000 members in public employment and in the private-nonprofit sector in California. Defendant George Diaz is an employee of the City of San Francisco who was assigned to work in the HSA in connection with the various workplace grievances filed by Plaintiff as well as three separate disciplinary actions during Plaintiff's four-year tenure at the HSA. The collective bargaining agreement between the City and the Union provided for a grievance procedure which ends in final and binding arbitration. Plaintiff forfeited the Union's prosecution of the three grievances resulting from conduct during her employment. Plaintiff alleges that Defendant Diaz made sexual advances to her, conditioned his representation of her upon her submission, and that the Union knew or should have known about the harassment and is therefore liable.

On October 23, 2009, Plaintiff filed her complaint in this matter, alleging causes of action against the City for: (1) race discrimination in violation of provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. section 2000e-2(a); (2) retaliation; (3) harassment on account of race, color and national origin; (4) sex discrimination in violation of provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. section 2000e-2(a); (5) unlawful discriminatory practices in violation of provisions of 42 U.S.C. section 1981; (6) discrimination based on race, color and national origin in violation of the Fair employment and Housing Act ("FEHA"), California Government Code section 12940a; (7) retaliation under California Government Code section 12940h; (8) harassment on account of race and color in violation of

1 California Government Code section 12900j; (9) sex discrimination in violation of FEHA; (10)
2 discrimination based on race or sex in violation of the California Constitution, Article I, Section
3 8.
4     Plaintiff also alleges causes of action against the Union Defendants. In the process of
5 opposing the motion for summary judgment filed by the Union Defendants, Plaintiff abandoned
6 all but two of those remaining causes of action: (1) claim twelve for sex discrimination against
7 the individual Union defendants in violation of provisions of Title VII, 42 U.S.C. section
8 2000e-2(a); and (2) claim eighteen for sexual harassment against the Union Defendants in
9 violation of California Government Code section 12940j.
10     The Court shall address additional facts in the remainder of its order

## ANALYSIS

**A.  Standards Applicable to Motions for Summary Judgment.**

    A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

    The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if it may affect the outcome of the case. *Id.* at 248. If the party moving for summary judgment does not have the ultimate burden of persuasion at trial, that party must produce evidence which either negates an

essential element of the non-moving party's claims or that party must show that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party meets its initial burden, the non-moving party must go beyond the pleadings and, by its own evidence, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

In order to make this showing, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). In addition, the party seeking to establish a genuine issue of material fact must take care adequately to point a court to the evidence precluding summary judgment because a court is "'not required to comb the record to find some reason to deny a motion for summary judgment.'" *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (quoting *Forsberg v. Pacific Northwest Bell Telephone Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)). If the non-moving party fails to point to evidence precluding summary judgment, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

**B.     Plaintiff's Discrimination Claims Do Not Survive Summary Judgment.**

Plaintiff brings claims for race and gender discrimination and contends that the City terminated her employment based on her membership in a protected class. In order to make a claim for discrimination, Plaintiff must establish that she suffered an adverse employment action that was motivated by intentional discriminatory animus. *See, e.g., Guz v. Bechtel National, Inc*., 24 Cal.4th 317, 353-58 (2000). The proper legal framework for determining whether Plaintiff's claim should survive summary judgment is the familiar burden-shifting scheme set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

First, Plaintiff must establish a prima facie case of discrimination. *See id.*; *Guz,* 24 Cal.4th at 351-54. Whether Plaintiff can meet her burden to establish a prima facie case of discrimination is a matter of law to be determined by the court. *Caldwell v. Paramount Unified School District*, 41 Cal. App. 4th 189, 201 (1995). If Plaintiff establishes a prima facie case, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its

4

employment decision. Then, in order to prevail, Plaintiff must demonstrate that the employer's alleged reason for the adverse employment decision was a pretext for another, discriminatory motive. *See Guz*, 24 Cal.4th at 351-54; *see also Villiarimo v. Aloha Island Air, Inc*., 281 F.3d 1054, 1061 (9th Cir. 2002). Plaintiff may establish a prima facie case of discrimination by demonstrating that (1) she belongs to a statutorily protected class; (2) she was qualified for an available position; (3) she suffered an adverse employment decision; and (4) similarly situated individuals not in the protected class were treated more favorably. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506 (1993). The only significant difference in the FEHA analysis is that in order to establish a prima facie case, Plaintiff must, in addition to the first three elements, demonstrate some other circumstances that suggests discriminatory motive. *See, e.g., Guz*, 24 Cal.4th at 355.

If Plaintiff succeeds in establishing a prima facie case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for terminating Plaintiff's employment. *See McDonnell Douglas*, 411 U.S. at 802. If the employer does so, Plaintiff must demonstrate that the employer's articulated reason is a pretext for unlawful discrimination by "'either directly persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1124 (9th Cir. 2000) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). Plaintiff's evidence must be both specific and substantial to overcome the legitimate reasons set forth by her employer. *Aragon v. Republic Silver State Disposal, Inc*., 292 F.3d 654, 659 (9th Cir. 2002).

**1.      Prima Facie Case Against the City.**

At summary judgment, the degree of proof necessary to establish a prima facie case is "minimal and does not even need to rise to the level of a preponderance of the evidence." *Lyons v. England,* 307 F.3d 1092, 1112 (9th Cir. 2002) (quoting *Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 889 (9th Cir. 1994)). Although the burden for establishing a prima facie case is an easy one to satisfy, Plaintiff has failed to do so here. Although Plaintiff's race and gender make her a member of two protected classes, and her termination qualifies as an adverse employment

5

1  action, and she has demonstrated that she was qualified for the position,[1] she has not

2  demonstrated that other, similarly situated individuals not in the protected class were treated

3  more favorably.

4  Plaintiff has not shown that other employees outside of her protected class were treated

5  more favorably for the same or similar conduct.  Plaintiff does not even allege in her complaint

6  that similarly situated employees were treated more favorably than she was.  In her opposition

7  to the City's motion for summary judgment, Plaintiff contends, without any supporting

8  evidence, that numerous other employees were not subjected to the same discipline for similar

9  conduct. (*See* Opp. Br. at 19-20.)

10  To support her contention that other employees not in her protected class were treated

11  more favorably, Plaintiff cites to her own declaration in which she states that she was

12  disciplined for working during her lunch hour and for insubordination and that others were not

13  so disciplined. (Declaration of Shawn L. Williams ("Williams Decl."), ¶¶ 17, 19, 24-25.)[2]

14  Plaintiff alleges that it was her belief that the discipline she incurred as a result of her conduct

15  was in fact that result of her status as an African American.  (*Id*.)   She states that, unlike non

16  African American co-workers, she was disproportionately disciplined as a result of her status as

17  an African American.[3]

18  Plaintiff does not proffer, and, having scoured the record, the Court has not found any

19  evidence that other specific individuals had similar records or were disciplined less severely for

---

[1] Although there is some dispute in the record about the quality of Plaintiff's performance considering her inadequate performance reviews, because these reviews constitute a part of the basis for Plaintiff's allegations of discrimination, the Court will not adjudicate whether Plaintiff has made out a prima facie case on this basis.

[2] Notwithstanding the fact that Plaintiff submits evidence for which there is no proper foundation, the Court has examined all of the evidence submitted by both parties and has made its determination on the merits.  Therefore, the Court need not rule on the admissibility of the evidence at this time.  To the limited extent the Court relied upon evidence objected to by either party in resolving Defendant's motion, the objections are overruled.

[3] Plaintiff neither argues nor sets forth any evidence at all that the City treated her any differently from other employees as a result of her sex.  There is nothing but the barest of allegations in the complaint that the City made any discriminatory decision based upon her gender.  Accordingly, Plaintiff's claims against the City for sex discrimination are dismissed (counts 4, 9 and part of 10).

6

similar conduct. Further, there is no evidence that any particular person was in the same or materially similar job. Lastly, there is no evidence that any discipline, or lack of discipline, resulted from the same or even materially similar conduct. There is no evidence in the record indicating who these alleged non-African American people were, what their job duties were, what qualifications they possessed, what division they worked in, whether or not they are members of Plaintiff's protected class, or how they are similarly situated. *See Vasquez v. City of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2004) ("[I]ndividuals are similarly situated when they have similar jobs and display similar conduct.") Plaintiff has not established that any individuals who allegedly faced lesser sanctions for similar conduct were actually comparable situations. Although similarly situated does not require that the employees be identically situated, the critical question is whether the plaintiff and the other employees are similarly situated in all material aspects. *See Bowden v. Potter*, 308 F. Supp. 2d 1108, 1117 (N.D. Cal. 2004). The question for the court is whether the purported purpose of the challenged action required similar treatment of the two employees or whether the different situations justified different treatment due to differences in the employees' status or other condition beside race. *Id.*

Based on this dearth of evidence, Plaintiff has failed to raise a dispute of fact regarding whether other employees with similar qualifications, but outside of her protected class, were treated more favorably. *See Texas Dep't of Community Affairs*, 450 U.S. at 258 (holding that the plaintiff bears the burden of showing that similarly situated co-workers were treated differently). Because there is no evidence that other, similarly situated individuals were treated more favorably based upon their race, the Court finds that Plaintiff has not met her burden to demonstrate the existence of a prima facie case of race discrimination based on this factor. Therefore, summary judgment on Plaintiff's claims based on race discrimination are properly granted.

However, even assuming *arguendo* that Plaintiff had established a prima facie case of race discrimination, summary judgment is still warranted because the City has asserted a

7

legitimate, nondiscriminatory reason for its treatment of Plaintiff, and Plaintiff has failed to demonstrate the reason is merely pretextual.

### 2. The City Has Demonstrated Legitimate Business Reasons For Its Conduct.

Even if Plaintiff could successfully establish a prima facie case of either race or gender discrimination, the undisputed facts demonstrate that the City had legitimate business reasons to terminate Plaintiff's employment. Failure to perform in accordance with the standards set by the employer is sufficient to constitute a legitimate business reason for termination. *See Hersant v. Dept. of Social Services*, 57 Cal. App. 4th 997, 1007-1010 (1997). The record is replete with complaints regarding Plaintiff's performance and violations of specific directives from her supervisors. These ongoing performance issues resulted in numerous verbal and written counselings, written warnings, a work plan to improve her performance, two suspensions, and finally, her termination.

There is evidence that Plaintiff was unwilling to take instruction from her supervisors, despite repeated counseling. (Bond Decl., Ex. A at 108:11-111:23, Exs. 2, 3, 57.) There is evidence that Plaintiff was rude to her co-workers, supervisors and clients, despite repeated counseling. (Wilson Decl., ¶¶ 7-8, 12-13; Bond Decl., Ex. A at 133:1-12, 241:14-242:3, 382:10-391:7, Exs. 9, 57; D; Ellison Decl., Ex. B.) There is evidence that Plaintiff did not follow directives about taking time off. (*Id.* at ¶¶ 9-10; Declaration of Bart Ellison ("Ellison Decl."), ¶¶ 13-16, Ex. B.) There is evidence that Plaintiff was involved in multiple incidents over many years in which co-workers complained about her lack of cooperation. (Bond Decl., Ex. A at 36:9-38:18, 105:18-106:17, 113:6-116:15, 232:4-233:25, Exs. 16, 17.) There is evidence that Plaintiff was repeatedly reprimanded for continuing to disturb her co-workers and for her failure to cooperate with co-workers, despite repeated counseling. (*Id.* at 232:4-234:2, Exs. 9, 15, 16.) Plaintiff was admonished for her repeated failure to adhere to the City's rules

8

1  about maintaining client confidentiality, despite repeated counseling.  (Ellison Decl., Ex. E;
2  Bond Decl., Ex. A at 308:9-309:18, Exs. 22, 58, 59.)[4]

3  Plaintiff responds to the voluminous evidence of her performance issues on the job by
4  claiming that the reprimands, criticisms, and multiple performance reviews and disciplinary
5  actions were "much ado about nothing and petty, ridiculous fabrications."  (Williams Decl., ¶¶
6  14 and 21.)  However, the record of difficult performance and repeated counselings and
7  punitive actions stands uncontested.  Further, there is nothing in the record to sustain the claim
8  that any of the reported performance issues were related in any way to Plaintiff's sex or race.

9  The City has met its burden of demonstrating legitimate business reasons for terminating
10  Plaintiff's employment.

### 3. Plaintiff Fails to Raise an Issue of Disputed Fact Regarding Pretext.

Because the City presents evidence demonstrating a legitimate, nondiscriminatory reason for the termination, Plaintiff bears the burden of demonstrating that the City's articulated reason is pretextual.  Plaintiff may do so "either [1] directly by persuading the court that a discriminatory reason more likely motivated the employer or [2] indirectly by showing that the employer's proffered explanation is unworthy of credence."  *Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1437 (9th Cir. 1990) (internal cites and quotations omitted).

The Court has already determined that the undisputed evidence demonstrates that Plaintiff failed to perform her duties in compliance with the City's expectations and explicit governing rules of conduct.  Plaintiff fails to refute the City's legitimate, non-discriminatory reasons for termination and has no direct evidence that a discriminatory reason motivated her employer.  Instead, Plaintiff contends that she was subjected to increased and unwarranted scrutiny for conduct that others were not.  (Bond Decl., Ex. A at 159:18-161:25, 236:21-237:1; Williams Decl. ¶¶ 7, 19, 25, 20; Declaration of Frankie Johnson, ¶ 4.)  However, as the Court has already stated, Plaintiff does not proffer any evidence that any particular other non-African

---

[4] The Court notes that the City's termination of Plaintiff would have otherwise been proper considering Plaintiff's flagrant violations of the City's confidentiality rules.  *See O'Day v. McDonnell Douglas*, 79 F.3d 756,761-62 (9th Cir. 1996) (applying the after-acquired evidence doctrine in summary judgment of Title VII case where employee would have been fired for stealing sensitive personnel documents).

9

American worker was subjected to lesser discipline for the same conduct. It is clear from the record that the conduct or missing lunch hour and failing to document the time properly was a proper subject of discipline, for which Plaintiff was given adequate, and multiple, warnings.

Plaintiff also contends that she was given more work and less training than other workers. (Williams Decl., ¶¶ 31, 38, 53; Bond Decl., Ex. A at 75:23-76:3, 418:13-419:6.) The only evidence in the record indicates that foreign-language-speaking co-workers were given training in their native language. The uncontested evidence reveals that Plaintiff was specially selected for additional training and supervision by her supervisor, Ms. Wilson. (Wilson decl., ¶ 4.) There is no evidence that participation in or selection for any specific training session was based upon race.

Plaintiff attempts to argue that a single incident in which a co-worker placed a statuette of an African figurine nearby Plaintiff's workspace demonstrates that the City maintained a hostile and discriminatory workplace. (Williams Decl., ¶ 45; Bond Decl., Ex. A at 11:10-12:1.) This is the only incident in the record relating to Plaintiff's race. However, the record indicates that as soon as Plaintiff complained about the figurine's presence, it was immediately removed. (Ellison Decl., ¶ 29.) In addition, there is no evidence before the Court indicating that the person, a co-worker, who placed the figurine nearby Plaintiff's workspace was involved in any way with Plaintiff's employment or the decision to discipline or terminate her. *See McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1138 (9th Cir. 2004), *citing Price Waterhouse v. Hopkins,* 490 U.S. 228, 277 (1989) (O'Connor, J., concurring) ("[S]tatements by nondecisionmakers, nor statements by decisionmakers unrelated to the decisional process itself, [cannot alone] suffice to satisfy the plaintiff's burden in this regard."). Accordingly, this incident does not constitute a basis for Plaintiff's claim based on race discrimination.

Beside her unsupported and conclusory allegations, Plaintiff fails to set forth any direct evidence to persuade the court that a discriminatory reason more likely motivated the City or any indirect evidence tending to demonstrate that the City's proffered explanation is unworthy of credence. *See Merrick,* 892 F.2d at 1437. Having scoured the record, the Court finds there is no support for any of Plaintiff's claims based upon race or sex discrimination.

10

Accordingly, the Court grants summary judgment on Plaintiff's allegations of discrimination based on race or gender (causes of action one, three, four, five, six, eight, nine, and ten).

**C.     Plaintiff's Claim for Retaliation Does Not Survive Summary Judgment.**

In her second and seventh causes of action, Plaintiff allege liability for her termination based on retaliation. Similar to elements of establishing discrimination, the elements of a retaliation claim "require that (1) the plaintiff establish a prima facie case of retaliation, (2) the defendant articulate a legitimate, nonretaliatory explanation for its acts, and (3) the plaintiff show that the defendant's proffered explanation is merely a pretext for the illegal [action]." *Flait v. North American Watch Corp.*, 3 Cal. App. 4th 467, 476 (1992). In order to establish a prima facie case of retaliation, the plaintiff must show that (1) he engaged in a protected activity, (2) his employer subjected him to adverse employment action, and (3) there is a causal link between the protected activity and the employer's action. *Id.; see also Akers v. County of San Diego*, 95 Cal. App. 4th 1441, 1453 (2002) (same).

Plaintiff maintains that she engaged in protected activity when she filed an administrative charge of discrimination before the United States Equal Employment Opportunity Commission on August 6, 2009. (*See* Compl. at ¶ 26.) Besides merely stating that she was retaliated against for filing complaints, Plaintiff fails to proffer any evidence that her engagement in protected activity had any causal relation to any discipline she faced. As there is no evidence in the record demonstrating that the City engaged in any of the challenged conduct as a consequence of Plaintiff exercising her rights to file any complaint, Plaintiff fails to make out a prima facie case of retaliation.

However, even if Plaintiff were able to make out a prima facie case of retaliation, the Court finds that the City has articulated a legitimate, nonretaliatory explanation for its conduct, and Plaintiff cannot show that the City's proffered explanation is merely a pretext for illegal action. The City has articulated a legitimate basis for its actions toward Plaintiff with reference to the same conduct underlying Plaintiff's race discrimination claim. Plaintiff has failed to demonstrate that these proffered reasons are a mere pretext for unlawful discriminatory or retaliatory motive for the same reasons she has failed to so demonstrate for her claims of race or

11

sex discrimination. Therefore, the Court grants summary judgment on Plaintiff's second and seventh causes of action against the City for retaliation.

### D. Plaintiff's Claims for Sex Discrimination Against the Union Defendants Do Not Survive Summary Judgment.

The Union Defendants also move for summary judgment to dismiss the claims pending against them. The only remaining claims against the Union defendants are for sexual harassment under federal law against the Union (claim twelve) and sexual harassment under state law against all the Union Defendants (claim eighteen). In her complaint, Plaintiff alleges that since December 2008 and continuing until her termination, she was subjected to unwelcome and outrageous sexual advances by Chief Shop Steward, George Diaz, who "made it clear to Plaintiff that any assistance that he would provide her would be conditioned upon her responding to his sexual demands." (Compl. at ¶¶ 95, 146.) Plaintiff alleges that Diaz made sexual advances to her, conditioned his representation of her upon her submission, and that the Union knew or should have known about the harassment and is therefore liable.

In order to state a claim for quid pro quo harassment, Plaintiff must establish that a supervisor "explicitly or implicitly condition[ed] a job, a job benefits, or the absence of a job detriment, upon the employee's acceptance of sexual conduct." *Henye v. Caruso*, 69 F.3d 1475, 1478 (9th Cir. 1995) (quoting and adopting *Nichols v. Frank*, 42 F.3d 503, 511 (9th Cir. 1994). "Without the authority to act as an agent of the employer, a supervisor has no quid to give." *Holly D. v. California Institute of Technology*, 339 F.3d 1158, 1170 n.15 (9th Cir. 2003). Liability only attaches "only if a quid pro quo threat is implemented by some form of sufficiently concrete employment action. An unfulfilled, or inchoate, quid pro quo threat by a supervisor is not enough; something more is required." *Id.* at 1170. The threat must culminate in the actual coercion of a sexual act or some other "form of sufficiently concrete employment action" on account of the employee's refusal to submit. *See id.*

1    In this matter, it is unclear what Plaintiff contends is the concrete employment action
2    that allegedly resulted from her refusal to submit to Diaz's sexual overtures.[5] Here, Plaintiff has
3    sued Diaz as a steward of the Union, not as her employer supervisor. It is not clear that the
4    same analysis applies where there is no threat as a condition of employment. But, to the extent
5    Plaintiff appears to contend that the promise of the benefits of Union representation were
6    premised upon her submission to the alleged overtures by Diaz, the Court finds that the
7    evidence proffered in the record does not sustain the allegation made in the complaint.[6]

8    The only evidence of the alleged sexual advances by Diaz are contained in Plaintiff's
9    deposition in which she stated that Diaz often mentioned that he "needed some coochy."
10   (Harrington Decl., Ex. B (Williams deposition) at 92:11-15.)[7] Although Diaz disputes this ever
11   occurred, generating a question of fact, there is no indication in the record that Diaz implicitly
12   or explicitly demanded sexual favors of Plaintiff or that he conditioned his representation of her
13   upon her submission. Plaintiff's declaration submitted in opposition to the Union Defendants'
14   motion for summary judgment merely reiterates, almost verbatim, the allegations in her
15   complaint. However, mere reiterations of allegations, without supporting evidence, will not
16   defeat a motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250
17   (1986); *see also Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007)
18   ("[c]onclusory, speculative testimony in affidavits and moving papers is insufficient to raise
19   genuine issues of fact and defeat summary judgment."). The statements in the self-serving

---

[5] Although Plaintiff argues that her "rejection of Dias's [*sic*] sexual advances resulted in the termination of Plaintiff's employment," there is no evidence to sustain such a conclusory statement in the record. (Opp. Br. at 19.) The City, not Diaz, made the decision to terminate Plaintiff based on her lengthy history of performance problems.

[6] The undisputed evidence indicates that the Union and its representatives continuously and repeatedly represented Plaintiff in her disputes and complaints against the City. The record also makes clear that it was Plaintiff who, instead of requesting alternate Union representation, forfeited the ongoing claims made on her behalf by the Union. Plaintiff's forfeiture moots her contention that the Union was deficient in its representation of her interests. (*See, e.g.*, Declaration of Vincent A. Harrington ("Harrington Decl."), ¶¶ 8-16, Exs. E-K.)

[7] This statement, if actually made, would have constituted sexually inappropriate conduct. However, the comment is vague and, according to Plaintiff's own testimony, not clearly directed at her. The allegations in the complaint underlying Plaintiff's remaining claims against the Union Defendants are not supported by this testimony.

13

declaration are different from Plaintiff's sworn testimony and do not create a genuine issue of material fact to defeat summary judgment. *See Kennedy v. Allied Mutual Ins. Co.*, 952 F.2d 262, 266-67 (9th Cir. 1991).

In addition, Plaintiff premises liability against the Union itself on the basis that the Union "had knowledge of, or should have had knowledge of Diaz's sexually offending conduct." (Opp. Br. at 20.) However, there is no evidence to sustain such a conclusory claim. The record demonstrates that although Plaintiff had many opportunities to inform Diaz's supervisors of any unwanted or detrimental behavior, she never identified any problems with her ongoing representation by Diaz. Again, the self-serving and conclusory statements notwithstanding, the record simply does not support Plaintiff's claims. Lastly, the Union cannot be held vicariously liable for Diaz's conduct as he was not acting as its employee or supervisor, but was instead working as a steward on behalf of the City. *See Woods v. Graphic Communications*, 925 F.2d 1195, 1202 (9th Cir. 1991) (holding that union not vicariously liable for non-agent and could only be held liable if officials knew or should have known of the steward's harassment and failed to take prompt remedial action). Accordingly, the Court grants the Union Defendants' motion for summary judgment on Plaintiff's remaining claims (twelve and eighteen).

**CONCLUSION**

For the foregoing reasons, both the City's and the Union Defendants' motions for summary judgment are GRANTED. Judgment shall be entered in favor of Defendants and against Plaintiff.

**IT IS SO ORDERED.**

Dated: May 13, 2011

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE